Frances O. WARRINER, Appellant,

v.

Harry FINK et al., Appellees.

No. 19131.

United States Court of Appeals
Fifth Circuit.

Sept. 13, 1962.

Frances O. Warriner, Miami, Fla., appellant, in pro per.

James Lawrence King, Miami Beach, Fla. (Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, Fla., of counsel), for appellees.

Before RIVES, JONES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment dismissing a complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. The voluminous record consists mostly of legal conclusions, briefs and arguments. The complaint alone, with its exhibits, comprises ninety pages of the printed record. When the facts are ultimately distilled, however, they are comparatively simple. They can be best understood by stating them in chronological order.

On August 17, 1948, the plaintiff executed a mortgage on certain very valuable lands located in Monroe County, Florida, in the amount of $10,000.00. The mortgage was actually to Sam Kay, but was taken in the name of his brother-in-law, Morris Resnick. Kay knowingly exacted interest in excess of 25% in violation of Florida Statutes 687.07, F.S.A. The complaint alleges that a proper application of payments and credits would completely extinguish and discharge the debt.

On January 31, 1950, the plaintiff executed a rewritten mortgage for $10,-500.00 founded upon the same debt. Kay agreed to give her $3,000.00 previously withheld and an additional $500.00, but later refused to do so. While the mortgage was rewritten by Sam Kay and he was the real party in interest, it was taken in the name of Henry H. Herman.

The rewritten mortgage was without any consideration moving to plaintiff. Sam Kay was at all times the real party in interest, and Henry H. Herman, Marilyn Kay, Harry Fink and others conspired with Sam Kay to perpetrate a fraud on the plaintiff. On February 21, 1950, Herman transferred the mortgage to Marilyn Kay. On July 26, 1950, Marilyn Kay transferred it to Harry Fink. On October 26, 1960, Harry Fink filed his bill to foreclose the mortgage in the Circuit Court of Monroe County, Florida.

The plaintiff, Frances O. Warriner, employed an attorney to defend the foreclosure suit, and filed an answer admitting the residence and age of the parties but denying all other allegations. The complaint alleges:

"That on December 22, 1950, just three days before Christmas, Cisco [Mrs. Warriner's attorney], was tricked into a stipulation with Harold Kassewitz, attorney for Harry Fink, who concocted an unauthorized stipulation, intended and calculated to deprive the plaintiff herein, of her constitutional rights, of due process of law; and which, in effect, waived all of her substantial rights, erroneously, unlawfully and irregularly, without her knowledge, consent or approval, and was unauthorized as these attorneys then knew; and that the plaintiff herein was thus defrauded out of an opportunity to present her meritorious defense in the original action thereby, to her great damage and injury."

Attached to the complaint are affidavits of both of plaintiff's former attorneys. Attorney Cisco's affidavit reads as follows:

"In that certain cause pending in the Circuit Court of the Eleventh Judicial Circuit in and for Monroe County, Florida, in Chancery, No. 12–516, entitled 'Harry Fink, Plaintiff vs. Frances O. Warriner, Defendant,' upon request of the defendant I prepared an answer to the Bill of Complaint filed in the above entitled cause and traversed said bill

placing plaintiff upon due proof to establish the allegations of said Bill of Complaint; had I known at said time that a special defense, to-wit: usury, was involved, I would have set same up in said answer.

"Thereafter, I entered into a stipulation with Harold Kassewitz, attorney for plaintiff, and at his request, wherein and whereby final decree could be entered by the Court having jurisdiction of the subject matter of the suit and that the sale of the property was to be postponed beyond the time of the due process provided under the statutes and rules of the Court.

"The sole purpose and consideration (as cited in said stipulation) for the execution of said stipulation was to give the defendant an extension of time prior to the sale date within which to either pay the indebtedness, bid at sale or refinance her property. The record shows that no additional time beyond the statutory period was, in fact, extended to said defendant, which was not the purpose of such stipulation or the agreement between counsel.

"In addition the stipulation did not waive the necessity on the part of the plaintiff to introduce evidence to establish the debt sued upon, that is to say, the introduction into evidence and proof of the note or notes and mortgage securing same.

"I have no independent recollection, nor have I any notes or records as to whether or not the stipulation was discussed by me with Mrs. Warriner, but in any event, it would have never been executed by me except with the express understanding that a reasonable period of time was to be given to the defendant beyond the time which was allowed under the statute."

Relying upon the fraudulent stipulation, the court on December 28, 1950 entered a final decree finding Mrs. Warriner's indebtedness under the mortgage to be $11,458.40, plus $31.85 cost of abstract, plus $750.00 attorney's fee, and ordering the property sold by a special master to the highest and best bidder on February 5, 1951. At that sale Harry Fink became the purchaser "for the egregiously low sum of $1,000.00." The plaintiff had been kept in ignorance of the fraudulent stipulation, the final decree and the sale.

As soon as the plaintiff learned of those events, she employed other counsel, repudiated the unauthorized stipulation, and on March 6, 1951 filed her motion to set aside the final decree and the master's sale, and requested that she be allowed to offer her defense to the bill of foreclosure. The court, on September 20, 1951, granted the motion to set aside the sale, but denied the motion to set aside the final decree, and thus deprived plaintiff of her right to defend against the bill of foreclosure. The master conducted another sale on October 15, 1951, and Harry Fink again became the purchaser, but this time "for the egregiously low sum of $5,000.00." The master filed his report of sale on October 22, 1951, and a motion for confirmation was set for hearing on November 9, 1951, but was not heard because plaintiff's then attorney, Leland Hyzer, filed a notice of appeal the preceding day.

The transcript of record was filed in the Supreme Court of Florida on January 10, 1952. Two days later Harry Fink, the appellee, filed a motion to dismiss the appeal in which he undertook to deceive the Court into ruling that the appeal was from the decree of December 28, 1950, when in reality it was from the order of September 20, 1951. Plaintiff's then attorney, Leland Hyzer, wrote a letter to the Clerk of the Supreme Court of Florida explaining that, "the notice of appeal was taken from that portion of the Circuit Court's order denying the motion to set aside the final decree," and that, "it is our position that the record has been properly filed in accordance with Rule No. 12." Nonetheless, the Supreme Court of Florida on January 23, 1952 dismissed the appeal without any consideration of

the merits, but sustaining Harry Fink's motion that the transcript of the record on appeal was not filed within time.

The plaintiff has since litigated extensively in Florida in an effort to have her defense to the foreclosure of the mortgage heard on its merits, but always without success. She now brings the present complaint to enjoin the defendants from enforcing the final decree of foreclosure, and to attack that decree as void. No diversity of citizenship is alleged. Instead, in the complaint filed in her own proper person, the plaintiff expresses her theory of the federal court's jurisdiction as follows:

> "This action arises under the Constitution of the United States, the First, Fifth and Fourteenth Amendments, thereof, the 'Taking of Property Without Due Process of Law,' and the 'Denial of Equal Protection Under the Laws of the Land,' as hereinafter more fully and particularly appears. This is a civil suit brought for the purpose of declaring null and void and enjoining the enforcement of a certain order of the Circuit Court of the Sixteenth Judicial Circuit, in and for Monroe County, Florida, In Chancery, entitled 'Final Decree of Foreclosure,' entered December 28, 1950, and Recorded in Chancery Order Book A–7 at Pages 34/42, which seeks to deprive the plaintiff of her property without due process of law and denies the plaintiff the equal protection of the laws in violation of her rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States and that the order is therefore illegal, null and void * * * "

The plaintiff has appeared and argued the case very creditably in her own behalf and has impressed the Court with her sincerity. It is for that reason and to enable her the more easily to petition for review of our judgment in the Supreme Court of the United States, if she so desires, that we have set forth the facts alleged in the complaint in such detail.

The plaintiff insists that through no fault of her own she is being deprived of valuable properties without any hearing on the merits of her defense to the bill of foreclosure and thus without due process of law. Her argument is that the purported final decree of foreclosure is an absolute nullity because of fraud practiced on the court, and that a federal district court can enjoin a party from enforcement of such a void judgment under such authorities as Simon v. Southern Railway Company, 1915, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, and Johnson v. First National Bank, 10 Cir., 1955, 223 F.2d 31.

We are convinced, however, that when the plaintiff failed to seek review by the Supreme Court of the United States of the judgment of the Supreme Court of Florida of January 23, 1952 dismissing her appeal, she lost the only avenue of relief available to her in the federal courts. In the light of the anti-injunction statute, 28 U.S.C.A. § 2283, and of a number of decisions of the Supreme Court and of this and other Circuits, in which the principles are fully discussed, we hold that the federal district court had no jurisdiction to enjoin the enforcement of, or to set aside, or hold null and void the decree of foreclosure entered by the Circuit Court of Monroe County, Florida. See Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100; Chicago Life Ins. Co. v. Cherry, 1917, 244 U.S. 25, 30, 37 S.Ct. 492, 61 L.Ed. 966; Manufacturer's Record Publishing Co. v. Lauer, 5 Cir., 1959, 268 F.2d 187; T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397, 402, et seq.; Hanna v. Home Insurance Company, 5 Cir., 1960, 281 F.2d 298; Sexton v. Barry, 6 Cir., 1956, 233 F.2d 220; numerous cases collected in Annotation 13 A.L.R.2d, pp. 467, et seq. § 23. The judgment is therefore

Affirmed.

JONES, Circuit Judge, concurs in the result.